UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRETT IAN ANDREWS,

        Petitioner,

v.

                                     Civil No. 2:24cv85
                                     Criminal No. 2:22cr5

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND ORDER

This matter is before the Court on Brett Ian Andrews' ("Petitioner") <u>pro se</u> motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 51. The Government filed a response labeled as a "motion to dismiss," ECF No. 59; however, the substance of such motion, which was submitted with new evidence, attacks the merits of Petitioner's claims. Petitioner then filed a legal brief and affidavit in opposition to dismissal and in support of § 2255 relief, ECF No. 62, and the Government submitted a reply brief, ECF No. 63. For the reasons explained below, Petitioner's § 2255 motion is **DENIED** in part and **TAKEN UNDER ADVISEMENT** in part.

## I. BACKGROUND

In January of 2022, a grand jury returned a four count indictment charging Petitioner with two counts of Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), and two counts of Attempted Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470. ECF No. 15. On May

23, 2022, following plea negotiations, the Government filed a one count criminal information charging Petitioner with Attempted Production of a Visual Depiction of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2251(a). ECF No. 27. One week later, Petitioner appeared before a Magistrate Judge of this Court for his guilty plea hearing and, with the benefit of a written plea agreement, entered a plea of guilty to the single-count criminal information. At that hearing, the AUSA assigned to Petitioner's case explained the three formal plea offers that the Government had extended to Petitioner:

> **THE COURT:** All right. Now, have you read that Plea Agreement?
>
> **THE DEFENDANT:** Yes, I have, Your Honor.
>
> **THE COURT:** Has your counsel fully explained the Plea Agreement to you?
>
> **THE DEFENDANT:** Yes, he has, Your Honor.
>
> **THE COURT:** Now let me ask the government. Ms. Gantt, were there any plea offers made by the government other than that which is reflected in the Plea Agreement before the Court?
>
> **MS. GANTT:** Yes, Your Honor. This is the third plea offer. The first plea offer was to one of the 18 U.S.C. 2422 counts in the indictment, which carries a penalty of 10 years to life. The second plea offer was to the same count, but with a nonbinding recommendation cap of 20 years. And then after the defendant indicated his preference to the count to which he's pleading guilty, which carries 15 to 30, we filed the Information with the final plea offer.
>
> **THE COURT:** All right. Let me start with you, Mr. Latuga. Did you communicate the details of each of these prior plea offers to your client?
>
> **MR. LATUGA:** Yes, I did, Your Honor.

2

**THE COURT:** And, Mr. Andrews, did you discuss thoroughly with your attorney these prior plea offers as represented by the government?

**THE DEFENDANT:** Yes, I did, Your Honor.

**THE COURT:** Did you fully discuss, consider, and reject each of those prior plea offers?

**THE DEFENDANT:** Yes, I did, Your Honor.

ECF No. 57, at 15-16.

Consistent with the Government's sentencing recommendation associated with the second plea offer, Petitioner's written plea agreement adopting the third plea offer included a provision whereby the Government agreed not to seek a sentence above 20 years' imprisonment. ECF No. 32 ¶ 5. Like the recommendation in the second plea offer, this recommendation was not binding on the Court, meaning that the Court retained the authority to sentence Petitioner to up to 30 years' imprisonment.

A presentence investigation report ("PSR") was then prepared, and Petitioner's Guideline Offense Level was calculated to be Level 46. ECF No. 41 ¶ 64. For context, the Guideline Sentencing Table provides advisory sentencing ranges for Offense Levels 1 through 43, meaning that an Offense Level 46 is quite literally "off the chart." Moreover, an Offense Level of 43 calls for a sentence of "life" imprisonment for all criminal history categories, including defendants with no prior convictions.

Though the Guidelines would have recommended that Petitioner be sentenced to life imprisonment, because defense counsel

negotiated a plea to a § 2251(a) offense carrying a statutory maximum punishment of 30 years, Petitioner appeared before the Court for sentencing with a "restricted" Guideline range of 360 months' imprisonment. The importance of this Guideline restriction is significant, as the Government's request for a downward variance to 20 years' imprisonment was normalized by reference to the restricted range of 30 years. Stated another way, while a variance from 30 years to 20 years is substantial, it is not extraordinary, whereas a variance from "life" to 20 years' imprisonment is so large that, in the undersigned judge's experience, it almost never occurs.

In addition to the undersigned's general experience, the sentencing judge made statements demonstrating the case-specific importance of the 30-year upper limit on Petitioner's sentence. As part of the judge's analysis, she explained: "the ceiling for the Court is not life, but . . . 30 years, and so I'm starting at the 30-year ceiling." ECF No. 58, at 34; see also id. at 25 (indicating that the sentencing judge maintains a chart of prior sentencings to help avoid unwarranted disparities, and then: (1) comparing Petitioner's case to past cases, including one with a "life" Guideline range that was restricted to 360 months; and (2) commenting on the fact that Petitioner's offense level of 46 was higher than the comparator cases). After considering all of the relevant sentencing factors, the sentencing judge imposed a

sentence of 228 months imprisonment. This represented an 11-year variance below the advisory Guideline range and statutory ceiling of 30 years.

Petitioner did not appeal his conviction or sentence, and the judgement became final in February of 2023. Petitioner thereafter timely filed the instant § 2255 motion. ECF No. 51. After being ordered to respond, the Government filed a "motion to dismiss" Petitioner's § 2255 motion. ECF No. 59. Such motion does not seek a procedural dismissal of any § 2255 claims, but instead advances new evidence and asks the Court to resolve the § 2255 claims on their merits. Id. at 7. Petitioner was afforded additional time to respond in support of his § 2255 motion and in opposition to the Government's request for "dismissal,"[1] ECF Nos. 61, 62, and the Government thereafter filed a reply brief, ECF No. 63. The Government has provided the Court with an affidavit from Petitioner's former lawyers, as well as hearing transcripts and contemporaneous letters and emails documenting plea negotiations. ECF Nos. 59-1 to 59-6. Petitioner, for his part, provided the Court with an affidavit that supplements the sworn allegations contained in his original § 2255 motion. ECF No. 62-1.

---

[1] The Court agrees with Petitioner that the Government's motion seeking dismissal is somewhat curious in the absence of a procedural challenge to any of the § 2255 claims (i.e., timeliness, default, etc.). As contemplated by Rule 5 of the Rules Governing § 2255 Proceedings for U.S. District Courts, the Government typically files an Answer in the form of an opposition brief, not a motion to dismiss, when it challenges a § 2255 motion solely on its merits.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge their conviction or sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence or conviction] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A claim that defense counsel provided ineffective assistance, a type of constitutional violation, is appropriately advanced for the first time in a § 2255 motion. United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). A petitioner must prove an ineffective assistance claim by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Applying the Sixth Amendment, the Supreme Court has held that the right to counsel is the right to "effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 685 (1984). To obtain relief based on an allegation of ineffective assistance, a petitioner must normally establish that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the petitioner. Id. at 687–88.

6

With respect to performance, the Constitution does not guarantee errorless representation, and to prove deficient performance a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687. Reviewing courts strongly presume that defense counsel exercised reasonable professional judgment. Id. at 689. So it is only in "relatively rare situations" that a petitioner can demonstrate that "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As "it is all too easy" to challenge an act, omission, or strategy after it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Ultimately, the "basic lesson" of Strickland is not just deference but high deference, and attorneys "can be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014).

Considering Strickland's prejudice prong, a petitioner must ordinarily "affirmatively prove" that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland,

466 U.S. at 693-94.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When a petitioner challenges a conviction entered after a guilty plea, the petitioner must demonstrate a reasonable probability that: (1) "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 59 (1985); or alternatively, (2) "he could have negotiated a plea agreement with terms more favorable than the consequences of the plea he entered on counsel's misadvice," United States v. Akande, 956 F.3d 257, 264 n.4 (4th Cir. 2020).

### III. DISCUSSION

### A. Misadvice on First Step Act

Petitioner first argues that defense counsel provided constitutionally ineffective assistance by failing to accurately respond to his questions about his eligibility for sentence credits under the First Step Act ("FSA"). ECF No. 51, at 4.   Importantly, it is undisputed that: (1) Petitioner would have been eligible for FSA sentence credits if he pled guilty to a § 2422(b) offense (as charged in the indictment) and thereafter completed certain BOP courses while incarcerated; and (2) Petitioner is categorically ineligible for those same FSA sentence credits because he pled guilty to a § 2251(a) offense (as charged in the criminal information).   See ECF No. 59, at 8; 18 U.S.C. § 3632(d)(4)(D).

The Government, in turn, asserts that Petitioner fails to

8

allege a constitutional violation because potential FSA credits
that are contingent on future conduct are a "collateral" matter,
and controlling law establishes that defense counsel need not
provide advice on collateral issues in preparation for a guilty
plea.   See Bustos v. White, 521 F.3d 321, 325 (4th Cir. 2008)
(surveying caselaw holding that defense counsel does not have an
affirmative duty to advise a defendant about "collateral
consequence[s] of a guilty plea," to include parole eligibility);
United States v. Jeter, 161 F.3d 4, 1998 WL 482781, at *2 (4th
Cir. 1998) (unpublished) ("An attorney is not ineffective for
failing to explain an entirely collateral consequence of a plea to
a defendant.").[2]   The Government acknowledges, however, that unlike
failure to advise on a collateral issue, gross misadvice on a
collateral issue can support an ineffective assistance claim if
the issue is material to a defendant's plea decision.   See Strader
v. Garrison, 611 F.2d 61, 65 (4th Cir. 1979) ("[T]hough parole
eligibility dates are collateral consequences of the entry of a
guilty plea of which a defendant need not be informed if he does
not inquire, when he is grossly misinformed about it by his lawyer,
and relies upon that misinformation, he is deprived of his

---

[2] As explained in United States v. Johnson, 272 F. Supp. 3d 728, 731-32 (D.
Md. 2017), the impact of a guilty plea on a defendant's risk of deportation
is a well-established exception to the "direct-collateral distinction."   See
Sims v. United States, 785 F. App'x 632, 634 (11th Cir. 2019) ("An attorney's
failure to advise his client of collateral consequences of pleading guilty,
other than deportation, is not a Sixth Amendment violation." (citing Chaidez
v. United States, 568 U.S. 342, 356 (2013))).

constitutional right to counsel."); <u>Sims v. United States</u>, 785 F. App'x 632, 634 (11th Cir. 2019) ("[A]ffirmative misadvice about the collateral consequences of a guilty plea may constitute ineffective assistance of counsel [as it may] . . . render the guilty plea constitutionally uninformed.") (quotation marks omitted); <u>see also</u> <u>Akande</u>, 956 F.3d at 265 (holding that "the legitimacy of [guilty pleas'] role in our criminal justice system depends on a defendant's ability to understand the consequences of a guilty plea in order to make an informed decision," and that "inaccurate advice" regarding the ability to appeal an unfavorable suppression ruling "denied [the defendant] the Sixth Amendment right to effective assistance of counsel").

Construed liberally, Petitioner's § 2255 motion alleges more than a mere failure to advise, as Petitioner claims that he specifically asked his counsel about FSA credits but his counsel failed to accurately explain the relevant law.  ECF No. 51, at 4. Petitioner's later affidavit eliminates any potential ambiguity as it clearly asserts that counsel affirmatively provided material misinformation:

> I specifically asked my attorney to explain the First Step Act (FSA) and whether it would apply to either of the plea offers.  I requested documents or materials about the FSA so I could understand if I qualified for reduced sentence credits if I accepted the second plea offer under 18 U.S.C. § 2422.  My attorney dismissed my requests for this information and told me <u>it did not matter because, according to him, all sex offenses were disqualified from earning sentence reduction credits under the FSA.</u>  I later learned that my attorney's

statements were inaccurate. Had I accepted the plea under 18 U.S.C. § 2422, I would have been eligible for reduced sentence credits under the FSA by participating in recidivism reduction programs. . . . This failure . . . deprived me of the ability to make an informed decision during plea negotiations, leading me to accept the plea under § 2251, which did not qualify for FSA credits.

ECF No. 62-1, at 2 (emphasis added).

As the Government suggests in its reply brief, ECF No. 63, at 4, Petitioner's sworn statement appears to create a genuine factual dispute regarding whether his lawyers provided constitutionally effective representation. See ECF No. 59-3, at 2 (reflecting defense counsel's sworn statements that "Mr. Andrews did not ask counsel about application of the First Step Act nor did he request any materials related to it").[3] However, the Government asserts that an evidentiary hearing is not necessary to resolve this factual dispute based on Petitioner's purported failure to state in his affidavit that, but for the incorrect legal advice, he would have pled guilty to the § 2422(b) offense. ECF No. 63, at 4.

First addressing Petitioner's subjective state of mind, the Government's attack on Petitioner's affidavit is misplaced as the Government overlooks the section of Petitioner's affidavit titled "Prejudice and Decision-Making." ECF No. 62-1, at 3. In that section, Petitioner clearly states: "Had I been properly informed

---

[3] Petitioner had two attorneys representing him in this case, and both electronically signed the affidavit that is now before the Court. It is not immediately clear from the record whether Petitioner claims that one or both of his lawyers provided inaccurate legal advice.

of the FSA's sentence reduction credits and provided the requested materials to fully understand my eligibility, I would have chosen the plea offer under 18 U.S.C. § 2422, which would have allowed me to earn credits and potentially reduce my sentence." Id. The Court therefore rejects the Government's request for dismissal due to Petitioner's purported failure to address his subjective viewpoint as to the competing plea offers.[4]

Although Petitioner asserts under oath that he would have accepted the plea to § 2422(b) had he been properly informed of the FSA impact, the prejudice inquiry does not end there, as Strickland's second prong is objective in nature. A petitioner's "subjective preferences, therefore, are not dispositive; what matters is whether [accepting the earlier plea offer] would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012); Mitchell v. United States, No. 4:12cr10, 2017 WL 6031813, at *5 (E.D. Va. Dec. 5, 2017) ("Although [the prejudice test applicable to a forgone plea offer] 'focuses the inquiry on a subjective question, the answer to that question must be reached through an objective

---

[4] This Court is "rightly skeptical of [Petitioner's] post hoc claim[]" favoring the § 2422(b) plea offer as the record lacks "'contemporaneous evidence to substantiate [his] expressed preferences.'" United States v. Heyward, 42 F.4th 460, 466-67 (4th Cir. 2022) (quoting Lee v. United States, 582 U.S. 357, 369 (2017)). However, it is prudent to permit further factual development in this case due to the unique format of the plea negotiations. Importantly, this case appears atypical as it essentially involved two competing plea offers that the Government was willing to accept, with each offer carrying unique benefits and drawbacks that required balancing of the respective pros and cons before a decision was made by Petitioner.

analysis.'" (quoting <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988))).

Here, at first blush, there appears to be a strong argument that Petitioner's only objectively reasonable option was the plea offer he accepted, which is also the offer strongly recommended by his counsel. Notably, while the § 2251(a) plea offer disqualified Petitioner from receiving FSA credits, it capped his incarceration at 30 years. In contrast, the § 2422(b) offer would have allowed Petitioner to earn FSA credits, but also would have exposed him to the legitimate risk of a life sentence.

Upon closer review of the record, however, and in the absence of any argument from the Government on the objective standard, the Court cannot <u>sua</u> <u>sponte</u> find that it would have been objectively unreasonable for Petitioner to accept the § 2422(b) offer. To be clear, the strategic advantage to appearing at sentencing with a 30-year maximum and requesting a more reasonable downward variance cannot be overstated, especially when the alternative is appearing with a life maximum and asking the sentencing judge "for the moon." However, the Court cannot find on this unargued issue that it would have been objectively unreasonable to plead guilty to § 2242(b) because the § 2242(b) plea offer was coupled with the Government's promise to recommend a sentence of not more than 20 years' imprisonment. Not only do Government sentencing recommendations seeking leniency routinely carry significant sway with the Court,

but Petitioner's crimes involved primarily fictious victims, a fact that could support an "objectively reasonable" (though potentially incorrect) belief that the Court would follow the Government's recommendation regardless of the statute of conviction.   Accordingly, based on the current record, the Court cannot conclude, <u>sua</u> <u>sponte</u>, than it would have been unreasonable to accept the § 2242(b) plea offer.[5]   See <u>Akande</u>, 956 F.3d at 264 ("A defendant need not show that [the option he rejected in favor of his guilty plea] would have been the best objective strategy or even an attractive option; he need only show a reasonable likelihood that a person in his shoes would have chosen [it].") (cleaned up).

Because Petitioner and his former counsel provide conflicting sworn statements regarding counsel's alleged misadvice that cannot be reconciled without credibility findings, and because the Government's prejudice argument is misplaced, an evidentiary hearing is warranted.   See <u>United States v. King</u>, 679 F. App'x 297, 299 (4th Cir. 2017) (explaining that "an evidentiary hearing is especially warranted" in a case where there are material factual

---

[5] The plea to § 2242(b) also would have involved a lower mandatory minimum sentence, further illustrating the need for a strategic decision among competing rational options.  Cf. <u>United States v. Swaby</u>, 855 F.3d 233, 244 (4th Cir. 2017) (noting that the alternative decision "does not need to be optimal and does not need to ensure [a better outcome]; it only needs to be rational").  Petitioner's age may also have been a factor that would lead a reasonable person in his position to devalue the perceived benefit of capping the sentence at 30 years.  That is, at the age of 53, Petitioner may have viewed a sentence of 30 years as a "de facto" life sentence, thus increasing his tolerance for risking a sentence of life.

disputes regarding non-frivolous issues that "turn upon credibility determinations and relate primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light") (quotation marks omitted); cf. Esparza v. United States, No. C22-5961, 2023 WL 3337890, at *3 (W.D. Wash. May 10, 2023) (finding that an evidentiary hearing was needed to resolve the timeliness and merits of petitioner's claim that "his attorney incorrectly informed him that he would qualify for RDAP and time credits under the First Step Act"). Petitioner's first § 2255 claim is therefore **TAKEN UNDER ADVISEMENT**.

### B. Failure to Challenge Guidelines

Petitioner next argues that defense counsel provided ineffective assistance by failing to challenge Petitioner's Guideline calculation.[6] As outlined in greater detail in the Government's responsive filing, ECF No. 59, at 13-21, this claim fails to satisfy either prong of the Strickland test.

As to the performance prong, Petitioner fails to identify any Guideline error that is so apparent that counsel's decision to not challenge it amounted to constitutionally deficient performance.

---

[6] Though Petitioner labels his claim as asserting errors in the calculation of his "Criminal History Points," his § 2255 claim actually challenges his Guideline Offense Level calculation as: (1) Petitioner was a first time offender who was not assessed any criminal history points; and (2) Petitioner's § 2255 motion expressly references Guideline enhancements that are part of his Offense Level calculation (i.e., use of a computer, commission of multiple offenses, etc.). See Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023) ("[P]ro se filings must be construed liberally so as to do substantial justice.") (quotation marks and citation omitted).

See United States v. Carthorne, 878 F.3d 458, 466 (4th Cir. 2017) (indicating that defense counsel "may be constitutionally required to object when there is relevant authority strongly suggesting that a sentencing enhancement is not proper" and there is not a strategic reason to forgo such objection).   To the contrary, Petitioner's § 2255 motion offers little beyond his stated "belief" that the Guidelines should have been challenged. Petitioner's subsequent memorandum advances somewhat more detailed arguments, though these too fail to demonstrate that counsel erred, let alone demonstrate an error of constitutional proportions.

To the extent Petitioner asserts that his lawyer should have challenged the "pseudo-count" Guideline calculation identifying three different "victims," Petitioner fails to identify a valid basis to challenge this calculation.   Contrary to his suggestion, his Guideline calculation does not implicate any concerns regarding "acquitted conduct" or improper "judicial factfinding" as Petitioner admitted in his sworn statement of facts that there were two undercover "victims" and that he possessed a laptop computer containing conversations and explicit videos from a third victim.   Cf. U.S.S.G. § 2G2.1(d)(1) (indicating that when an offense involves multiple minors, or undercover officers a defendant believed to be minors, the Guideline grouping rules are to be applied as if the exploitation of each "minor" was "contained in a separate count of conviction").

16

As to the use of a computer Guideline enhancement, Petitioner admitted in his statement of facts that he used both his iPhone and multiple laptop computers during the course of his criminal activities.  See United States v. Gallegos, No. 22-2107, 2023 WL 8802687, at *2 (10th Cir. Dec. 20, 2023) ("As a threshold matter, a cell phone is a 'computer' under federal law.").  Petitioner's suggestion that this enhancement is inapplicable or unjust is therefore unsupported by the record.

Finally, as to the enhancement for possessing child pornography involving sadistic or masochistic conduct (or alternatively, images involving the sexual abuse of infants), nothing in Petitioner's § 2255 motion or subsequent brief suggests that counsel performed deficiently.  Based on the case-specific record, there appears to have been multiple videos/images that could have supported this enhancement, and Petitioner fails to overcome the presumption that counsel acted strategically by electing not to object, thereby avoiding the need for the Court to review and evaluate the disturbing videos/images.  Furthermore, as to all of the Guideline calculation challenges, Petitioner's newly advanced assertion that he argued "profusely" with his counsel about raising these objections prior to sentencing directly conflicts with his sworn statements at sentencing that there were no errors in the PSR.  ECF No. 58, at 5-6; see United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence

of extraordinary circumstances, the truth of sworn statements"
made in response to a judge's questions in open court "is
conclusively established.") (citation omitted).

Having failed to identify an error in his Guideline
calculation that "should" have been challenged by defense counsel,
Petitioner similarly fails to identify a reasonable probability of
a different outcome had counsel raised an objection to the
Guideline calculation.[7] As Petitioner fails to satisfy either
prong of <u>Strickland</u>, his second ineffective assistance claim is
**DENIED.**

### C. Failure to Challenge PSR "Inaccuracies"

Petitioner's next argument is similar to his last, as he
contends that defense counsel provided ineffective assistance by
failing to challenge several "inaccuracies" in the PSR, broadly
identifying "accusations of prior crimes," and "misinformation
about his personal finances." ECF No. 62, at 15. First, as with
the prior claim, even at this late stage in the proceedings,
Petitioner fails to identify any error by counsel that was so

---

[7] Due to Guideline grouping rules, it appears that the Guideline enhancement
regarding sadistic or violent images only increased Petitioner's Offense
Level total by 1 level. The only "group" of counts that included this
enhancement was the group with the lowest adjusted Offense Level, and
removing the enhancement (or alternatively, removing this entire "group")
would only reduce the assigned "grouping" enhancement in PSR ¶ 59 from a 4-
level enhancement to a 3-level enhancement. In such scenario, Petitioner's
Offense Level total would have remained "off the chart" and his unrestricted
Guideline range would still have been "life." Similarly, it appears that
eliminating the 2-level computer enhancement would not reduce Petitioner's
unrestricted advisory Guideline range below "life."

egregious that it constituted a constitutional error cognizable on collateral review. In fact, he fails to even identify the specific information in the PSR that he now claims to be inaccurate. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (holding that § 2255 claims that are supported by "vague and conclusory allegations" are insufficient to carry a petitioner's burden, and such allegations "may be disposed of without further investigation by the District Court.") (quotation marks omitted).

Second, Petitioner stated under oath at sentencing that his PSR, which includes information documenting his online conduct with an underage girl and two undercover agents, as well as his finances, had no errors, and furthermore, that the PSR was an "accurate reflection of his history and characteristics." ECF No. 58, at 5. Petitioner's post-hoc efforts to contradict his prior sworn statements are rejected as patently frivolous. See Lemaster, 403 F.3d at 221 (explaining that allegations in a § 2255 motion that directly contradict the petitioner's prior sworn statements may be viewed as "palpably incredible" and "patently frivolous or false"). For all of these reasons, Petitioner fails to demonstrate deficient performance or resulting prejudice, and his third § 2255 claim is therefore DENIED.

### D. Ineffective Counsel – Lifetime Supervision

Petitioner's final ground for relief alleges that there are "many constitutional and legal issues" with his lifetime period of

19

supervision, and that because a lifetime term is excessive, counsel should have challenged it.  ECF No. 51, at 8.  Petitioner, however, again fails to identify an error of constitutional dimensions committed by counsel or a reasonable likelihood of a different outcome had counsel performed more effectively.

First, Petitioner was well-advised that he was facing a statutory term of supervision of 5 years to life, and the nature of his graphic efforts to engage in sexual activities with minor girls offered the sentencing judge every reason to impose the maximum term of supervised release.  Second, the fact that defense counsel successfully secured a variance sentence of only 19 years' imprisonment in the face of an Offense Level 46 illustrates the reasonableness of counsel's strategic decision to focus solely on reducing the term of imprisonment.  Third, due to the nature of the crime and risk of recidivism, it is not uncommon in sex offense cases for the Court to impose very long terms of supervision to protect the public, especially when the offense involves direct contact and/or solicitation.  Fourth and finally, considering the entire "sentence package" imposed in this case, it was surely reasonable for counsel not to object to lifetime supervision as the Court's counter to the defense-friendly shortened period of incapacitation.  For all of these reasons, Petitioner falls far short of undermining counsel's strategic election to utilize the limited capital he had with the sentencing judge to argue for a

lesser term of incarceration rather than seek additional leniency by also focusing on supervised release.

In addition to failing to demonstrate that counsel made an unreasonable strategic decision to singularly focus on the term of incarceration, Petitioner fails to demonstrate resulting prejudice. Based on the disturbing criminal conduct involved in this case, which involved almost immediate escalation to graphic sexual advances at the outset of Petitioner's online introduction to a perceived minor girl, as well as Petitioner's aggravating step of having "voice conversations" with one perceived victim, Petitioner fails to demonstrate a reasonable likelihood of a different outcome had defense counsel objected to the Supervised Release term. ECF No. 58, at 26-27. Such finding is further illustrated by the fact that Petitioner attempted to obstruct justice after he was arrested, an effort to deceive the Court that "surprised" the sentencing judge and created an additional hurdle to securing a shorter term of supervised release. Id. at 34. In summary, Petitioner's ineffective assistance claim fails as to both prongs of Strickland, and it is therefore **DENIED** on the merits.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 ineffective assistance claims are **DENIED** on the merits, with the exception of Ground One (challenging counsel's affirmative misadvice regarding

FSA sentence credits), which is **TAKEN UNDER ADVISEMENT** pending an evidentiary hearing.[8]   ECF Nos. 51.

In light of the need for an evidentiary hearing in this case, and as required by the Rules Governing § 2255 Proceedings for U.S. District Courts, Petitioner is eligible for the appointment of counsel if he financially qualifies for such appointment.   See R. Governing § 2255 Proceedings for U.S. Dist. Cts. 8(c) ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").   If he does not financially qualify for appointed counsel, Petitioner may retain counsel to represent him at the evidentiary hearing.

To apprise the Court of the situation, no later than **January 10, 2025**, Petitioner is **INSTRUCTED** to file a notice and/or motion with this Court indicating whether he is financially able to obtain counsel to assist him at the § 2255 evidentiary hearing.   If Petitioner submits a motion requesting court-appointed counsel, he shall include documentation regarding his finances, including information about balances in any prison accounts as well as his other assets and debts.   A blank financial affidavit form will be

---

[8] Petitioner's original § 2255 memorandum requested a six month stay of the § 2255 proceeding to afford Petitioner time to seek the assistance of counsel. ECF No. 52, at 1-2. Such request is deemed moot in light of the Court's prior ruling granting Petitioner additional time to file his response to the Government's dismissal motion, which set a deadline for Petitioner's filing more than six months after Petitioner's § 2255 motion was originally filed. ECF No. 61, at 2.

provided to Petitioner and it should be completed and returned if Petitioner files a motion requesting court-appointed counsel.

After habeas counsel is appointed or retained, counsel for Petitioner and counsel for the Government shall: (1) confer regarding mutually agreeable hearing dates; and (2) contact the undersigned Judge's calendar clerk to schedule an evidentiary hearing.[9]  The hearing shall be conducted as soon as practicable after habeas counsel is appointed or retained.[10]  Petitioner **will be required** to appear at the evidentiary hearing.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, the United States Attorney's Office in Norfolk, Virginia, and the United States Marshals Service.  Additionally, the Clerk is **REQUESTED** to send Petitioner a blank Financial Affidavit form.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 17 , 2024

---

[9] Counsel may wish to jointly consult with Petitioner's prior attorneys regarding scheduling as one or both may be necessary witnesses.

[10] Due to the potential risks involved in proceeding on the § 2255 claim that is taken under advisement (including the possibility of a longer sentence if Petitioner succeeded on such claim), Petitioner may wish to discuss the potential risks and rewards with his new lawyer.  Should Petitioner elect not to proceed on this claim, habeas counsel may file an appropriate motion with the Court, signed by both counsel and Petitioner.

23